Good morning, ladies and gentlemen. Our first case of the morning is case number 118605, in re A.A. Are you ready to proceed? Ready? Good morning, Your Honors. Good morning. I'm Edwin Anderson, counsel for Matthew A., the appellant in this case. Your Honors, Matthew A. is the father by voluntary acknowledgement of paternity of the child A.A. A.A. was born on April 26, 2013, and at that time Matthew signed a voluntary acknowledgement of paternity. In the course of proceedings in juvenile court where there was custody taken by the Department of Children and Family Services of the children of C.S., the mother, and her children by a number of different men, it was determined through DNA testing that Matthew A. is not the biological father of A.A. It's our contention in this appeal that the court, in ruling in this case, failed to use the proper analysis in approaching the case. This court has said repeatedly in cases that the starting point for everything the courts of Illinois do with regard to children in cases in the court system involves the best interests of the child. It is the fundamental starting point to all actions taken by the circuit court, in this instance, in a wardship situation. This is also the fundamental point in parentage actions. Are you talking about GSA and John M. cases, those two cases? Yes, Your Honor. But didn't those cases clearly make a distinguish between the parental determination and the decision to grant parentage right after parentage had been established? That's the contention made by Appelese and was made in the appellate court. My contention would be that the essential point is that there still has to be an evaluation of best interests. And these cases are not the same as the J.M. case in that those cases you don't have the V.A.P. situation with the father already having acted as the parent. And here you have a situation where not only do you have a father who has served as the father, has had his rights acknowledged, and wishes to continue to do so, but the biological father is deceased. I understand, counsel, the contention on whether best interests apply or not, but is it a little odd to be arguing that in this case where the child was neglected for the first few weeks of his life until DCFS removed the child from the home where Matthew and the mother resided? I agree that this is not the ideal situation to argue that Matthew A. is going to win Father of the Year awards for what happened in the first few weeks of this child's life. I would say, however, that this case was not one where there was a point where it was determined that termination of parole rights was going to happen, that I believe the condition in this case was that the child, the children, would eventually hope to be returned home to the parents. I work every week in the circuit court in Jefferson County and am involved in these types of cases. I know that the judges who handle these cases, the attorneys who work as the GALs, as the representatives of the parents, do start with the belief that we're acting on behalf of the kids to make sure they're safe, to make sure that they're going to be taken care of, and that's what DCFS is there for as well. I have not seen an instance where the attitude was, this is an unsafe parent, but we're going to give the child back to them. Services were required in this case. Matthew A. was working more than full time at the general tire plant in Mount Vernon. Justice Carmeier, I believe, could confirm that employment at General Tire is one of the best industrial jobs a person can have in the Jefferson County region. So his presence in the home in those early weeks of this child's life was limited, and the mother was a person who needed services. And that's the point we were at when this action took place with the desire to identify who the biological father was, first of a different child and then of AA. Counselor, you speak very passionately and beautifully about the protection of the children, but this issue about the determination of the father-child relationship has been codified, public policy has been codified in the statutes, and your brief really doesn't talk about the statutory scheme that the legislature has created to resolve these issues. As you say, a petition was filed by the jail on behalf of the child, pursuant to the statute, to Section 7B. Can you explain to us your argument as to how you are reading in the concept of the best interest of the child coming before the statutory structure of a hearing first on this motion to declare a nonexistence of parental-child relationship? Certainly, Your Honor. It's my argument that so fundamental is the concept of best interest that it underlays everything, and that it's analogous to the concepts of due process and equal protection that apply in criminal procedure. We have criminal laws, criminal code that sets out procedures that are followed, depending on certain hearings that are happening. Those statutes don't necessarily set out with specificity that these steps of due process will be taken. This assurance of equal protection will occur. The judge must account for these due process rights. It's understood. We have procedures that are applied equally to everyone. There are steps that are applied in every case. My contention is that this Court has said many times that the best interest of the child is above all. It's the touchstone of what we do. Based on that, I would argue that it's implicit that that's the starting point. In this case, and I'm sure it's clear from my brief, that we have literally a live father who is wanting to be the parent of this child, and a deceased individual who didn't want to be the father of this child, and his right to parentage has been exalted over the living V.A.P. father who is in a position to be a good parent to this child. What about in Ray J.M.? This Court has said that that was a case about the establishment of paternity, not here with this establishment. But the Court said, Thus, even though paternity may be established under the filing of a petition under 7A, that was under 7A, such a right to have custody or visitation with a child shall not be granted unless it is in the best interest of the child. So the Court here was saying, in terms of procedure, first there's a hearing on 7A or maybe 7B, and then issues of the right to have custody, et cetera, and the issue of child's best interest comes afterwards. Isn't that what the Court is saying? I believe it's pointing out that when we get to the step of establishing that parental right, that the best interest steps must be taken, and that has to be a guiding point of the judge who's considering the case. But again, my argument would be, before that, as the matter is addressed in court and the order for testing occurs, when the preliminary steps are taken, there still has to be consideration of what is going to happen to this child, how is that going to affect him, and is it going to be a safe environment for the child? And I agree that there's statutory language that specifies best interest, and that's applied in these cases. We don't have direct statutory descriptions about what happens when you have a V.A.P. that turns out to not be a biological father. But because we don't have that, you would fall back, then, certainly, on the general concept of court acting with the best interest of the child in hand. Are you saying that there's constitutional protection for him as the established father beyond the presumption of paternity? That's my argument. That's also the argument of the amicus briefs, the brief filed by the Department of Health and Human Services, I believe. And I would agree that once you have that status as the V.A.P., that you do then have a constitutional interest that has to be respected and a termination done, as it was in this case, with really simply the application of the pure DNA result as the overarching decider isn't appropriate. So the V.A.P. is what triggers the best interest requirement. Is that what you're saying? Well, the child being in court with decisions being made about his custody, being the subject of a situation where he's going to reside with one family, reside with another family, be in foster care, all those things, put the circuit court in the position of having to evaluate best interests. In this instance, the guardian ad litem brought the challenge to the criminal rights of the V.A.P. wasn't looking at it from the terms of best interests. I think he acknowledged that. His view was that we have a DNA test that shows you the biological dad is. End of story. And that's the position that the circuit court took. The circuit court's order essentially tracks the petition drafted by the G.A.L. and it's a fairly rote decision that we have the DNA. That's the decider. Rights go to the biological dad. The appellees would say that that's the end point, that we're good. We have an identified father. Process can run from there. Our argument is that that started at the wrong point, that there was an obligation by the G.A.L. to look at best interests. We have the knowledge that the biological father is deceased. We have the knowledge that the V.A.P. father is someone in a position to be able to and to want to care for this child with the biological mother. And in that circumstance, the proper course is to make a best interest finding and determine who's best suited, the deceased biological father, the living V.A.P. father. The statute speaks in the language of, again, 7B, an action to declare the nonexistence of the parent-child relationship. So how is a court to factor in best interests of the child in light of that kind of action, to disestablish the parent-child relationship when the evidence presented is the DNA evidence? How is that supposed to work, to disestablish the biological father? Well, and I realize one of the arguments that's made by Apolyse, maybe it's one of the amicus briefs, is that this sets the stage for chaotic incidents where V.A.P.s are given parental rights and biological parents are excluded from challenging. And that making that best interest finding from the beginning will lead to this chaotic situation where the V.A.P.s are frequently given the parole rights in favor of biological parents. I would contend that this situation is fairly unique. I don't feel that it is my obligation to argue the large policy standpoint. I represent Matthew A., one man, one child, whose ability to have a relationship with this child is put in question by the actions of the Circuit Court in Jefferson County. My sense of this case is, in the broader picture, there are unique factors here that don't lead to a broad result that negates that statute, that implies that the court would be creating a public policy finding contrary to the statute. And I think that's part of their argument, is that you're being asked to make a large public policy decision that runs contrary to the legislation that is in effect in the Parentage Act. Well, I guess I'm more into, rather than the public policy, the statutory construction. So what kind of hearing would you suggest is required under Section 7B, an action to declare the nonexistence of the parent-child relationship that may be brought by the child? What kind of evidence do you think would be, the court should review to determine whether or not the trial court here should have declared nonexistence of a parent relationship, or the existence of a parent relationship in light of the DNA evidence? What would this hearing look like under the statute, under your theory? Well, I would say that, in this instance, the GAL could have brought forth witnesses who speak to Court H, the biological father's status. In an instance where the biological father is still present and alive, the court can discern, is that biological father someone who is fit to care for that child? Is the VAP a fit parent who can care for this child? How long has the VAP been responsible for this child in this child's life? Admittedly, in this case, it wasn't very long. This is an infant at the time this began. I can picture other cases where the VAP's been the established parent for years, and that's the parent the child knows. A worst-case scenario would be a child who chooses to want to rid himself of a VAP parent in favor of a biological parent who may not act in a way that is healthy for the child, but the child desires. So I think that there is the situation where you do have a starting point that GAL takes, and do I bring this petition that the court takes when it considers the petition that is part and parcel of that decision? And that's not what happened here. We just have basically the application of the DNA result. Your Honor, as my time is about up, again, my contention is that the decision of the Circuit Court in Jefferson County was improperly reached. It needs to be reversed, and I'd ask this Court to do so. Thank you very much. Thank you. May it please the Court? Counsel. Counsel. Jennifer Camden on behalf of the people of the State of Illinois. I urge this Court to affirm the appellate court's decision in this case. The appellate court correctly ruled that a man who signs a voluntary acknowledgement of parentage is only presumed to be the natural father of the child, and that the child may rebut that presumption by presenting clear and convincing evidence that another man is his or her biological father. It is not the child's burden at that initial stage to prove to the judge that it is in the child's best interest to grant the child's petition and disestablish the man who signed the voluntary acknowledgement. The Parentage Act is clear, creating a two-prong analysis. Under the first section, Section 7, paternity is established or disestablished, and Section 7 does not provide for a best interest analysis. And then once the parentage ruling is made, under Section 14, the court considers what effect that ruling will have on the child's life with respect to matters of custody, guardianship, and visitation. And in that analysis, the court does take into account the best interest of the child. In that analysis, the best interest of the child is paramount. The appellate court correctly ruled that before the best interest of the child standard can be applied to determine a parent's rights, that party must first be a parent. And this court has recognized the plain language of the Parentage Act and the existence of that two-prong analysis. In the J.W. case, this court stated that, quote, in actions under the Parentage Act, paternity is at issue and must first be proved. In the John M. case, as Your Honor noted, this court recognized that the Parentage Act doesn't require a best interest analysis prior to a determination of parentage and noted that under Section 14 of the Act, after parentage is determined, then the parental rights are determined based on the best interest of the child. This court further held that that statutory framework was not facially unconstitutional. And in the JSA case, this court rejected an argument that legal recognition of a parenthood petitioner would disrupt the child's life, noting that under Section 14, the involvement of that man in the child's life would turn on what was in the best interest of the child. The respondent states that questions of custody mean that the court must consider the best interest of the child, but it is in that second stage where the best interests of the child are considered in matters of custody. The respondent states that DNA evidence should not be used to determine parental rights, but as Your Honors have noted, there is a difference between parental rights and parentage. And this court has repeatedly noted that first parentage is determined, then parental rights are determined in the best interest of the child. The respondent argues that the best interest analysis pervades every issue having to do with child's custody and guardianship, et cetera. But that doesn't mean that the parentage determination must hinge on the best interest of the child. The appellate court aptly likened this issue to issues in parental termination cases in which first the fitness of the parent is determined, and that's a determination that occurs without reference to the best interest of the child. And then the court embarks in the second stage inquiry, a separate inquiry, into whether termination of the rights of an unfit parent is in the child's best interest. The legislature adopted a similar framework here. So the respondents urged judicial amendment to the Parentage Act would meld this two-stage proceeding that the legislature created into a single-stage proceeding in which issues of natural parentage would be determined based on what's in the child's best interest. And that's contrary to the plain language of the statute and principles of statutory interpretation. Section 2 of the Parentage Act defines the parent and child relationship as the legal relationship existing between a child and his or her natural or adoptive parents. Section 5 of the Parentage Act states that a man who signs a voluntary acknowledgement of parenthood is presumed to be the natural father of the child. And Section 7B provides for actions to declare the nonexistence of the parent and child relationship. And again, that relationship defined as the natural parenthood under Section 2. So it would be absurd to link the identity of the child's natural father to a best interest analysis that may or may not favor the natural father. And adding that best interest analysis to Section 7 proceedings would be counter to the principle that the court should not read into the statute exceptions or limitations or conditions that it does not contain. The respondent argues that parents who sign or men who sign voluntary acknowledgements have constitutionally protected parental rights and invokes concepts of due process and equal protection. It's important to note that a respondent is not actually mounting a constitutional challenge to the Parentage Act, nor is he asking this court to revisit or overturn the John M. case in which this court held that it was not racially unconstitutional for the Parentage Act to not require a best interest analysis in a Section 7 establishment or disestablishment action. There's no conflict between the Parentage Act's provisions and these concepts of parental rights because this court has stated that to have parental rights, one must first be a parent. In fact, earlier this year in the Scarlett Z.D. case, this court rejected a constitutional claim mounted by a man who claimed he was a, quote, functional parent because that claim, this court stated, just begged the question of whether he was a parent in the first place. The respondent stated that the circuit court exalted the rights of the natural father over him, but really the court exalted or honored the request of the child to establish his natural parent as his parent. And it is the rights of the child that are paramount in issues under the Parentage Act. The Parentage Act was created to secure the right of the child to the support of his natural parents, and the appellate court noted that establishment of Court H, in this case, as the child's natural parent, should mean that the child would be able to receive Social Security Survivor's benefits from his natural parent. He's entitled to those benefits, and the policy animating the Parentage Act should guarantee that he gets them. The respondent also stated that he wants to care for the child with the child's mother. I believe that the record reflects that the respondent, at least when the record was created last year, that the respondent and the mother are no longer together. But the respondent in presenting that best interest claim is presenting an analysis that wouldn't come into effect until the second stage, under Section 14. And one final note is that this court, in the John M. case, in denying the constitutional challenge to the Parentage Act, noted that generally when a best interest hearing is required prior to some action, it is for the protection of the child. And the court, in that case, criticized the putative father's invocation and use of the best interest standard to advance his own interests in that case. And this case presents similar facts. As in John M., the presumed father is invoking this best interest standard here, not as a shield, but as a sword. Not as a shield to protect the child's interests, but as a sword to attack the child's attempt to establish his natural parentage and to interpose himself between the child and his natural father, whom the mother testified that the respondent hated. If we agree with you that the first hearing is simply determination of who the parents are, Matthew is precluded from participating any further. Is that correct? I'm sorry, he's precluded? Matthew is precluded from participating in what would then be the second portion, the best interest of the child, custody, parenting rights, et cetera. I don't know that that would terminate him as a party. The statute says that after the parentage determination is made, that the court then determines issues of custody and guardianship and visitation. I'm thinking about, of course, this decision, whatever we make will be applicable to more than just this case. If you have a V.A.P. who has been involved in a child's life for a year or two or whatever, does best interest come in to play at a best interest hearing to determine who has the rights to have custody, visitation, that type of thing, even though the V.A.P. has declared not to be the father? I don't see why not, Your Honor. I mean, imagine a case in which this child had not been removed from the home and in which the V.A.P. father and the mother remained together. I mean, and imagine that in this case, as is true, the natural father is deceased. I mean, in that case, the V.A.P. father could perhaps petition for adoption of the child and attain parental rights in that fashion. The best interest of the child hearing and analysis is a broad one that could take into account whatever factual scenario happens to exist. Counsel, following up on Justice Carmeier's question, who would have standing in that best interest hearing? Would foster parents have standing if the child had been placed with foster parents during this process? I don't know the answer to that, Your Honor. Standing as party? Yes, in the best interest hearing, the second portion. I'm not sure that Section 14 states who may participate in the hearing. I'm sure that the judge could hear evidence on any issue pertaining to the custody and guardianship of the child. I'm certain that the judge can hear evidence on the child's current placement. I was interested in standing. Who would be able to participate if they chose to? I'm not sure that Section 14 states that, Your Honor. If there are no further questions, I respectfully request that the Court affirm. Thank you. With regard to the Scarlett CD case of this court, I think the most pertinent distinction is that the putative father in that case literally had no legal standing. He never took the steps to adopt. He had no basis by which he could be identified as a legal parent. Here, as I've said, the V.A.P. put my client, Matthew A., in the position of being someone with legal rights towards this child, legal responsibilities towards this child. When this case started, Matthew A. had the rights and responsibilities of a father. When this case left the circuit court in Jefferson County, Matthew A. was no longer considered a parent. And the question which was raised was, does he still have involvement in any further hearings? My understanding of how the law is interpreted and how it's applied in the circuit court I function in is that he would not have any direct involvement in further proceedings. He no longer has legal rights with this child that can be advanced in court. Now, down the road, yes, through the process with DCFS, with whatever social service agencies are involved, the potential for foster placement, the potential for adoption might happen, but that's years down the road. And certainly in this case we have interveners, the grandparents, the parents of poor age who have stepped in and wish to present their interest and say we want a relationship with this child and I think ultimately we want to be the caretaker of this child. And again, I don't believe that initially the sense is as grandparents they have a legal basis to step in immediately. It could be recognized down the road. But none of those issues are really before us now. We're just looking at this first step of the 7B petition. Yes. Counsel suggested that the argument that the circuit court, that my argument is that the VAP's rights should be exalted over the legal rights of the biological parent and that the GAL in a sense is actually the child's rights are being exalted in favor of anyone else here through the GAL. Again, the sense that I have, the sense I would ask this court to consider, is that the GAL did not have to file this petition. He chose to file it. There are cases where we have the same facts. No petition would be filed. The VAP parent would remain as the custodial parent perhaps. And it's on the GAL, and his actions have to be done with consideration of the best interest of the child. Because he acts through the circuit court, and the circuit court, again, must start fundamentally. What are we doing with this child? And I know it happens probably hundreds of times every day, of course, throughout the state, and that's this great court's responsibility to say this is how we do this. But here today, it's one man, one child, and my argument is the proper application is the consideration of what is in AA's best interest, and the circuit court went wrong when it exalted the DNA to the detriment of everything else. If I understand your argument that the GAL would determine in his or her own mind what is in the best interest of the child, we're not involving the court at all. That is, is it in the best interest to determine who the parents actually are, or is it in the best interest to say let's leave it alone and not find out because the child's okay where he or she is? That seems like you're giving the GAL the power to determine what's in the best interest. Well, I'm not giving him that. That's pretty much where we're at in the law, that that's the GAL's choice, and that's how it's happened, that we don't necessarily require that DNA test. We don't necessarily, in fact, the amicus say don't do this DNA testing regularly. It actually makes things worse. I do adopt positions taken by the amicus petitioners on my side, but I would say that this situation is one where it is on the GAL. He can act or he cannot act. It's his choice, but because his choice is founded in that best interest concept, when he chooses to act, he has to have made that consideration, and the court, in ratifying that decision by ruling on his petition, also has to act through that, and it's not simply a matter of following the standards set forth in a procedural portion of the parentage act. Mr. Anderson, to follow up on Justice Conroy's question again, doesn't that put in the GAL's responsibility usurping the judge's decision? Isn't it the GAL's responsibility to bring all the facts that is possible to the judge so the judge can make the determination whether there should be a DNA test or not, not whether it's the GAL's decision? Well, I would agree that in an ideal situation, the GAL would present all the background information the judge needs to make a reasoned decision. What would this hearing look like where we make this decision? Our county is not a large county, and the docket's not huge. There's time to make that kind of more in-depth study. Larger counties, it would probably be a problem to try and break out who's related to who, who gets along with who, who has substance abuse issues, who's parents don't get along, all relevant factors in how healthy is this child going to be and the environment we're putting it into. But I would say yes, it is the GAL's responsibility to present the relevant information so the judge can make the well-reasoned decision based on what's in the best interest of the child. Thank you, Your Honors. Thank you. Case number 118605, Henri AA, will be taken under advisement as agenda number 10. Mr. Anderson, Ms. Camden, thank you very much for your arguments today. You're both excused at this time.